AVON PERIODICALS, INC., Appellant-Respondent, *v.* ZIFF-DAVIS PUBLISHING COMPANY et al., Respondents-Appellants.

First Department, June 9, 1953.

*Robert E. Nickerson* of counsel (*John D. Roeder* with him on the brief; *William Gold,* attorney), for appellant-respondent.

*Nathan Waxman* for respondents-appellants.

*Per Curiam.* We think that the adoption by defendants of the title " Eerie," the same as that previously employed by plaintiff, in a magazine which also so closely duplicated the size, format, design and illustrated cover of plaintiff's magazine in the same " comic " field was bound to be confusing and constituted unfair competition.

Recognizing that plaintiff had no right to a monopoly on the use of the word " Eerie " and that plaintiff's use of the name had not achieved a secondary meaning in behalf of its magazine, we still think that defendants were not entitled to duplicate plaintiff's product to the point that there would be no obvious distinction between the two to the running eye.

We do not regard the decision in *Pocket Books, Inc.,* v. *Meyers* (292 N. Y. 58) as indicating a contrary result. The books there involved had varying titles as well as distinguishing marks and confusion would be unlikely. Here there is identity of title and subject without sufficiently distinguishing features.

Plaintiff is entitled to an injunction against defendants' use of the name " Eerie " in the " comic " field in connection with a magazine which in design and appearance simulates plaintiff's " Eerie " magazine.

Plaintiff has made no such showing of damage, however, as to justify the reference ordered or the award of more than nominal damages.

The judgment on both plaintiff's and defendants' appeals should be modified accordingly, without costs. Settle order.

Dore, J. (dissenting in part). After a four-day trial, the trial court found: (1) that plaintiff had no common-law right to the use of the word " Eerie " as the title of its so-called " horror comic "; that plaintiff failed to establish as a fact that its title had acquired a secondary meaning and a title that has acquired no secondary meaning is descriptive and open to all; that on the basis of all the credible evidence plaintiff had

failed to prove that defendants intentionally and willfully sought to palm off their magazine as that of plaintiff's; and that the parties each use a distinctive colophon or emblem imprinted on the cover of the respective magazines. He further held that from plaintiff's witnesses it was established that all the publications in this group are of similar size, contain thirty-two pages, sell for ten cents, generally carry a running head, have a colored title page on which are featured a praeternatural or unnatural body or skeleton and a terrified female. Nevertheless, the trial court found that it was the combination of all the component elements " which creates the vice "; and held that if the entire cover is likely to confuse or mislead then it is within the province of equity to interfere, citing *Pocket Books, Inc.*, v. *Meyers* (265 App. Div. 17). While he held defendants have the right to use the word " Eerie " in their title, he said they must do so in such manner as will sufficiently distinguish their product from plaintiff's and thus prevent deception. But the Appellate Division decision the court relied on, holding that it was the combination of component elements which creates the vice, had been reversed by the Court of Appeals in January, 1944 (292 N. Y. 58, 63). The Court of Appeals held that, in addition to elements which had passed into the domain of things public which gave to defendants' reprints an appearance similar to plaintiff's product, the defendants nevertheless, in that case, exercised reasonable care to convey to the purchasing public information which identified their product and reasonably distinguished it from that of the plaintiff. This is clearly so with respect to defendants' " Eerie Mysteries " in the present case.

The evidence sustains the finding of the trial court that all these so-called " horror comics " feature on the colored title page in the front of the books a praeternatural monster and a terrified female. Accordingly, there is no proprietary right in any such horrendous combination. That is the stock in trade of the cover of all such " comics ". Plaintiff's own witness, Diamond, admitted that in the course of his experience he never heard customers request a particular comic by particular title and that the way such comics are bought is that the potential buyer thumbs through as many different titles as he can and selects that comic which for some reason or other appeals to him or he doesn't purchase any and puts them all back on the stand.

Plaintiff brought out five issues of the Eerie horror comics. Defendants produced but one issue of " Eerie Adventures ",

and stipulated to discontinue the use of that title and substitute "Eerie Mysteries", the format of the colored front page of which is manifestly different from that of plaintiff's. In my opinion there was no basis for enjoining "Eerie Mysteries".

I agree with the majority that there is no basis for a reference.

For the reasons indicated, I dissent in part and vote to reverse the interlocutory judgment appealed from and dismiss the complaint; and, accordingly, to dismiss plaintiff's cross appeal as academic.

PECK, P. J., GLENNON and BREITEL, JJ., concur in *Per Curiam* opinion; DORE, J., dissents in part, in opinion.

Judgment modified in accordance with the opinion herein and, and so modified, affirmed, without costs. Settle order on notice.